I'm going to hear first from Mr. Matthew Kida, I hope I pronounced that correctly, and then Donna Paveler, Mr. Kida. Good morning, Your Honors. Thank you. May it please the Court. For the past hundred or so years, Texas courts have recognized that an employer's duty to provide its employees with necessary instrumentalities for the safe performance of their job is absolute, continuous, and non-delegable, or some combination of those three. But for the second time in the past four years, the district court has granted Kroger's motion for summary judgment after erroneously concluding that the scope of the duty is somehow limited to the facts of the case. I will say that I was a state trial judge and had a lot of slip and fall cases, and I think this may be even longer running than some of those. Homerian in epic proportions right now. It's like six years. The injury was nine years ago. No, but I mean the lawsuit was filed in 2011? Yes. Okay. So I guess my question would be, given that, two trips to us, or I guess at that point one trip to us, one trip to the Texas Supreme Court, wouldn't you just button this down in every way? I mean, even if you felt like you didn't have to attach the expert report, why — I've seen a lot of lawyers go, well, it's not necessary to do this, but even if it were, blob, here it is. And they just fill up the record with a million pages of stuff, half of it unnecessary, but at least then you've done it. Why wouldn't you do that? I think there are two reasons for that, Your Honor. First is Kroger didn't believe they satisfied their burden. But second, what I believe Kroger was trying to do in this case was essentially a backdoor way of challenging our expert without filing a Daubert motion. Instead, what it would do is make a blanket statement of, you have no evidence, which isn't allowed under the rules, then have me come up with my expert report. In my response brief, identify every conceivable grounds I can say why it should be admissible and why he is qualified, et cetera, so that they can then attack it for the first time in their reply. That's not allowed. A summary judgment procedure requires the move-in to conclusively establish the absence of a fact issue. They received an expert — Okay. Look, I understand the confusion because you're saying the Federal courts don't really have a 166-AI, qua-166-AI under Texas law. But the Federal courts do have the proposition that if you specifically point out the absence of evidence that the other side having the burden at trial lacks, and you specifically point that out, that there's no such evidence in the record, that does work in Federal court. I'm sorry. I know you don't want to agree to that, but it does work. It does work if you point to evidence that negates that element. No. If you say the record has an absence of evidence supporting an element of my opponent's claim that my opponent at trial would have to prove there just ain't any evidence of causation out there, then you have to come in and create a material issue of fact. We don't phrase it the way 166-AI does, but it is kind of similar. Actually, 166-AI was modeled after the Federal. I remember. I'm old enough. My reading of Celotex and every case that has followed it. Celotex is a good example. They were essentially saying there's no evidence of, in that case, asbestos exposure. But even in Celotex, they attached some evidence. They attached the interrogatories that had been served in which they weren't able to identify a single person who could show that this person was affected by the asbestos. In every other case that's ever interpreted this rule, they say you have to point to something in the record. They don't have to, as Kroger suggests, fill up the entire summary judgment record and say, hey, look, look at all this evidence, or look at all these documents. I have to be right. That's not the case. But you have to point to something. What Kroger did was they pointed to a single document from its employee manual and basically turned it into an expert opinion, essentially saying, look at this. This conclusively disproves. Essentially, as the district court properly recognized, that document was unauthenticated hearsay, an opinion testimony by an unidentified person that was never disclosed. That's not evidence. Okay? Kroger's corporate representative can't write we're not negligent on a cocktail napkin and attach that to their motion for summary judgment and say, hey, look, I pointed to something in the record. Now you have the complete burden to show your entire case right now in a motion practice. That's not how it works. Kroger was served with our expert report. There was evidence of causation produced. So let me ask you about that, because you have carefully not said what I would have said, which is, if you know there is evidence in the record and you file a motion that says there isn't, that that is a violation of Rule 11. I'm not doing that. You haven't said that, and I'm not really sure why, because it seems to me here is Kroger saying there's no evidence of causation when, in fact, they know there is because they have the expert report that you didn't attach, and now they're trying to kind of win because you didn't understand Federal law. I should say this. Ms. Peebler and I have become very good friends in not litigating not only this case and others. I think that the my interpretation of the summary judgment standard is correct. I think it's consistent with Celotek's, with this Court's opinion in the Ash v. Corley case. I think it's firm, it's well-established everywhere in the country. You have to point to something. You simply can't make a conclusory statement of no evidence. And because I believe the law is on my side, I wasn't going to accuse my counsel of acting in bad faith. I disagree with them, but I don't think they were trying to lie to the Court. I think they were employing a strategic tactic to try and get me to prop up my expert report without having to do a Daubert challenge. And remember, the record reflects, they were scheduled to depose my expert. My expert's report even says in there, I reserve the right to supplement this report as additional facts become known to me. This motion, excuse me, the motion for summary judgment, I believe, still pending the premature, I shouldn't say that because it may have been a scheduling order. But the long story short is Kroger was well aware that there was an expert on causation. But rather than attack his opinions, they tried to shift the burden to me. But it's clear under the Federal rules that the burden falls squarely on the movement. When it comes to trying to establish that there are no. But let's say you're wrong on that, that, in fact, it is enough to specifically say, my opponent, whose burden it is at trial to prove this, doesn't have any evidence in the record of causation. Let's assume that that's the law, arguendo. I know you don't think so, but I have dealt with a lot more of these. So anyway, that's fine. We'll assume that arguendo. Then what's your argument? How do you win? My argument would be that that statement would be contradictory to every other court that's ever decided the issue. And therefore. You're not assuming arguendo. You assume arguendo that I'm stating the law correctly. Okay? Then how do you win this case? If you're stating the law correctly, then I can't win this case. Okay? Well, because. You don't think the judge should have allowed you to file the report and the affidavit? Okay. Then that's what I was saying. I was saying the basis for my motion for reconsideration was that essentially Kroger was raising a new argument in its reply brief that hadn't raised in its original motion, which is essentially attacking the expert report, because it didn't do that in its original motion. And I believe that Rule, whether it's 59 or 54, whichever, I believe 54 applies to non-final judgments, which this order was, a motion for reconsideration, the Court should have allowed me to attach that. Okay. And if the Court allowed you to attach, then would you prevail? Yes, Your Honor, I believe. I believe it was. But if you had a, let's say, let's call it a 166-AI burden, because we understand that phraseology. If you had that burden, you think you met it with the expert report. I think I met it with the expert report and also with Kroger's own evidence. And let me take back my statement earlier that it couldn't be one. Kroger's own evidence here essentially shows that they created an oil spill in their bathroom, okay, ordered someone to come in special to clean it up, gave them some tools, but one of the tools that they did not provide them with was the very substance that they recommended being used. My guy who's been a janitor for 17 years said that, you know, he thought it might have been helpful to the Court, and he realized the district court called that speculative. But it's at the end of the day, we have Kroger requiring a product be used, a janitor saying that he thinks it would have helped, an obvious fall, and an average juror can conclude that oil is slippery, okay? And Kroger's argument is essentially, we gave him enough tools, he could have done it, and therefore there's no duty for us to provide you with anything else. And that's where I was going originally, Your Honor, is that courts can only grant a summary judgment on grounds that are requested by the movement. That's the first principle. And we know that in order to obtain that relief, you have to conclusively establish a fact issue, as you were saying before. Well, Kroger moved for summary judgment not on no-breach grounds. Kroger moved for summary judgment on the grounds that there is no duty. And it's a very important distinction, because we have to be on notice of the legal basis for their motion. So, for example, in Section A of Kroger's motion for summary judgment, they say there's no duty because Austin was aware of the danger. Now, the district court correctly rejected that argument. There's no support in Texas law for that whatsoever. But in Section A-2, they said the duty is limited to providing a person a single way to do a task. That's what they argued. It was a duty argument. Now, the cases they cited don't support that at all. But what the district court did is it took the language of the cases that Kroger cited for its incorrect legal proposition and then suggested that summary judgment was proper because I didn't put forward evidence of a breach or showing the absence of a breach. Kroger didn't move for summary judgment on no-breach grounds. Kroger moved for summary judgment on no duty or restricted duty. So our argument was there's that the idea that you can only or are only obligated to provide an employee with one way to do a task safely simply does not exist. No case supports that. In fact, one of the cases that Kroger cites in terms of foreseeability argument actually calls that argument specious. So that the argument that Kroger advanced, there's no duty, simply does not exist. And our response is specious. Sotomayor, You also said that there was no causation. That, to me, is the essence here. The third element is the causation. Exactly right. Duty is a question of law, so I would agree that the evidentiary issue isn't the But causation is a question of fact. So you need some evidence to support causation. And you didn't argue recepts in the trial court. So your argument is that this expert, together with their manual about spill magic, is good enough. Yes. But you didn't have the expert, so then that was why I was asking, and then you told me about Rule 54. That brings us to why you didn't have an expert, and the court decided it under 59E instead of 54B. What does that tell us? The Rule 54 is for nonfinal orders. So the motion for leave to file a certify, okay, was a nonfinal order. Rule 59 applies to judgments. And Rule 54, in the language of the opinions that I've interpreted, talked about how the court can allow relief under Rule 54 for any reason that justice or equity might require. And that's important here because clearly the evidence under Rule 59 for a motion for a new trial, this isn't new evidence. We all know that it exists, okay? This is simply a procedural tactic or a procedural issue as to whether the court would entertain another brief a month before trial for a case that's been pending for 7 years. And we respectfully submitted that justice and equity would allow the court to consider that report, given the fact that everyone knows that it exists, and it obviously addresses the merits of the issue. And rather than refuse to consider evidence, the district court should have, we respectfully submit, considered the evidence that actually supports the case and deal with it on the merits, as opposed to refusing to consider, you know, an expert that the plaintiff not only paid for, but, you know, served in discovery timely and there was no dispute about that whatsoever. I think the important thing here is to focus on the fact of what an affirmance of the trial court's judgment and opinion mean. If this Court affirms the no-duty language, okay, it means that every — the no-duty holdings and the no foreseeability as a matter of law holdings. It means every subsequent non-subscriber case that's filed in Federal court will be reviewed by this Court de novo. Because when it comes to was an instrumentality necessary or not, the preliminary question will be is there a duty. A duty is decided as a matter of law by the court, not by a jury. So even in the event that you had a judge that would allow a case to go to trial, in the event that a jury returned a verdict for the plaintiff, an appellate panel gets, you know, thinking back on it, the court got this instrumentality was not necessary as a matter of law. So therefore, we can throw the case out. Personal injury cases and the scope of someone's responsibility, whether they were reasonable under the circumstances, is not a legal issue. The — excuse me. The existence of evidence is certainly an issue. And in Texas, as you noted, Your Honor, there is a 166Ai. There's no evidence here. And if you look at all of the cases that Kroger cites, they talk about there was no breach, there was no negligence, there was no causation. None of them say there is no duty. There is always a duty. And I think this Court needs to emphasize that point in any opinion it writes, whether it affirms the ultimate judgment or if it reverses and remains for trial. Especially the part about the — Is there a middle ground? Can we reverse and remand for the district court to consider your motion to reconsider under the correct Rule 54 standard rather than the more difficult Rule 59 standard? I would certainly invite that, Your Honor. Anything that starts with reversal would certainly be in my client's. So let's list the ways. But to be quite honest, the other issue here, the argument that Kroger raised that the district court granted summary judgment on, even though it wasn't — there's been no law to support it, is the idea that it is unforeseeable as a matter of law that an employee will be injured when performing his routine job. That simply makes no sense. Okay? And this suggests that janitors, if a janitor is mopping the floor, we can expect that if he gets injured, that it would — sorry, that it's not foreseeable to think that a janitor mops the floor. Well, everybody's going to become a non-subscriber if that's the law. Of course. They're never going to have any — No. If the person's not performing their job duties, then they shouldn't be able to sue anyway. Of course. And that's the point. I mean, here we have a janitor, which perhaps for a room full of lawyers is easy to dismiss. How does that apply to an electrician or a welder? Oh, it's totally unforeseeable that an electrician might electrocute himself because that is his routine job. And if they're going to suggest that somehow it only applies when you're doing something that's dangerous, Texas law doesn't allow for that. And that's the Katie Springs v. Favalora case. Just a guy using a regular machine was injured when part of it hit him, and he was allowed to recover. The no duty and the unforeseeable as a matter of law simply has no support in Texas law. And to allow — to allow an affirmance based on those grounds would invite a drastic change in how non-subscriber cases are handled in Federal court. I see my time is up. I'll reserve my honor for your rebuttal. Thank you. Thank you, sir. You have some time on rebuttal. Ms. Peebler. Good morning, Your Honors. Thank you for allowing us to be here, and may it please the Court. The District Court had three grounds for granting summary judgment. The first was that he was performing his routine job at the time, as found by the Texas Supreme Court, and that as a matter of law, you cannot recover if performing a routine job. Can you explain to me how that makes a lick of sense? I can. Okay. Okay. There is a difference between course and scope and routine job. There are several cases out there where an employee is allowed to recover because he or she is performing something other than the customary work that they perform. But what you're basically saying is if you're a non-subscriber, you get a huge benefit, because let me give you an example of the dozens of workers' comp cases I handled back when they had workers' comp — when lawyers handled workers' comp cases 100 years ago, and that was somebody is getting a file out of a file cabinet as part of her job, she reaches down, as she pulls up, her back gets hurt. She would have a workers' comp case. She would have had a non-subscriber's case, depending, again, on the negligence of the — of the employer. So I'm trying to understand the notion that if you're performing — if you're performing your routine work, you suddenly are — the non-subscriber is insulated from liability actually gives them a huge benefit over those who go ahead and pay workers' comp premiums, and for whom, if you're injured in the course and scope of your employment, you pretty much get — get the recompense of workers' comp, and then the employer gets immunity. Right. From a policy standpoint, most non-subscribers, especially like Kroger — and there's evidence in the record that Kroger has its own benefit plan and actually paid 100 percent of Mr. Austin's medical benefits. So it's very like comp. You can still get benefits if performing your routine job. You just can't recover under negligence principles. And there are — it's — It's the opposite of what non-subscriber's all about. Non-subscriber takes away all defenses. Okay? It is supposed to be harder on the employer because the policy is to try to get people to do workers' comp. So your argument truly, to me, makes no sense. I mean, you can make it, and that's — and I may just have missed it. My much smarter and learned colleagues may understand it and agree with you. I just don't. To me, it makes — it totally turns the whole system on its head. I thought this was a Texas case. But y'all are still really smart and really learned, even if you're from Louisiana. Well, it's — Which is a terrific state, and everybody's smart and learned. That was not an insult to Louisiana, which is a terrific state full of wonderful people. Well, it simply is the law in Texas, whether right or wrong from a policy standpoint. It is the law in Texas. And keep in mind that when deciding issues of duty, the Texas courts do consider lots of factors, such as the risk, the foreseeability, likelihood of injury, weight against the social utility of the actor's conduct, the magnitude of the burden, and the consequences of placing that burden on the defendant. So there — the Texas Supreme Court has presumably, since it's already announced this law, gone through the policy considerations, and it has nonetheless decided not once but twice that when performing your customary work, if you're injured, it's not foreseeable as a matter of law, and there's no duty to protect against that. Well, what happens when we factor in what's present here, and that is this spill magic was furnished to the plaintiff in the normal performance of his work, except they were out of it on this time? Well, two answers. The first is there's actually no evidence that he customarily would have used this spill magic for this type of spill. In his testimony, the testimony that's cited by the plaintiff, the question is what would you use — what equipment would you use to clean up a wet spill? He answers, a wet spill, if it's — depending on where the area is, if it was cooking oil, I'd take spill magic to it. So the evidence is it depends on where the spill is, whether it's on the sales floor, warehouse. Well, he never had that option because this day his employer didn't furnish the usual tools with which he performed his work. And that brings us to the second grounds for summary judgment, which is completely standalone and independent of the routine job rule, and that is he had to show that it was necessary for the safe performance of his work, which he failed to present the evidence. He didn't have a chance to do that. He did. In response to our motion for summary judgment, where we specifically said in our motion there's no duty to provide more than one safe way, and in our brief Austin has presented no evidence that spill magic was necessary to the job's safe performance, we shifted the burden onto him, and he does not claim in this Court that Kroger failed to meet its burden of production under Rule 56 on the necessity issue. It's limited to the causation issue. So that burden shifted, and he failed to present any evidence that spill magic was necessary. There are lots of things . . . If he had had an opportunity under 54B instead of 59E to present the expert report, that would have been an opportunity to present just what you're saying he didn't. It would have been, except that if you look at his expert declaration, which has a lot of opinions that were not in the expert report provided to Kroger, there's nothing about the necessity of spill magic. It talks about what it does, and then there's a conclusory statement at the end that it was a substantial factor in causing this, but there's nowhere in that . . . in the declaration or in the report does the expert say that it's a necessary instrumentality in order to safely perform the work, nor does he go through the all-subs factors which were adopted by the Texas Supreme Court in Ellwood, including . . . What about Kroger's own manual? That evidence actually is not before the Court because it was never presented. We only have a statement by Mr. Keita in his brief that Kroger required it. It's not supported in the . . . Do you deny that's in your manual? I don't, and the answer is . . . I mean, the problem is, and I think people make this mistake because Rule 56 has changed, it does not any longer require an affidavit with an attachment. It requires that the evidence be in the record, and the record would include production of documents, et cetera. And then if you think there's something in the record that's false, you have to say they wouldn't be able to put this in admissible form. My Kroger manual that I've produced, they wouldn't be able to put that in admissible form. Well, you aren't going to make that objection because you can be laughed out of court for that one. So I'm not sure when we're talking about the record, are we talking about what's physically in front of the district court, or are we talking about the discovery in the case? Yes, I think you have to bring it to the judge, but the point is, is it absent from the materials in the case? I don't think so. Now, you're right, Your Honor, and the answer to that is that the Texas Supreme Court held in FFE Transportation Services, which is at 154 Southwest 3rd 84, on page 92, a company's internal policies alone do not determine the governing standard of care. Oh, no, of course not. But you're saying whether there's any evidence to support the concept that something's necessary. And I'm saying it's evidentiary of that. Your own policy is we provide this because we need it. Well, a policy may also provide that you have to wear a uniform. That does not make the uniform necessary to the safe performance of the job. There could be lots of reasons spill magic is required. It may be cheaper than buying replaceable dry mops. It may do the job more quickly and then save on man hours. It may do it better, but that doesn't necessarily mean safer. And that's where our evidence is lacking in this case. The plaintiff has failed to show that spill magic is necessary. Here's the problem that I have, and I'm just going to ask it straight up. Are you trying to win this case on a gotcha because you've got an opponent who, bless his heart, still is making, in my opinion, a completely wrong argument about Federal procedure, but obviously sincerely believes it? Are you trying to win this case on a gotcha six years and two appeals and Supreme Court later? We are not. Okay. Tell me why not. Because if we consider the expert report, let's say we consider the expert report and the declaration. Okay. How do you still win? The expert report and the declaration are completely silent on necessity. Okay. You don't think saying that with the spill magic he wouldn't have fallen is some evidence of necessity when you couple it with the manual and all that? I don't. I don't. The way the record reflects how this accident happened is Mr. Austin would walk across the spill and then mop from the back of the spill forward. There's no evidence that he wouldn't have done the same thing with spill magic, walk across. Yes, but if he sprinkled the spill magic, then it absorbs all of that. Then when he's walking across, he's walking across dry stuff, as I understand it. Then he isn't going to fall. The requirements for necessity under all subs is more than just showing that it would have prevented the fall. That's only one of the factors. That's the last of five or six factors. How is he supposed to clean this oily mess? He's supposed to use a mop. Okay. Well, he did. He fell. Why was the oily mess created in the first place? It was created from power washing some condensers, some air conditioning. And who was having that done? And who what, sir? Who was having that done? That was Kroger. Kroger. And that goes... And Kroger, why shouldn't Kroger have a duty before it does something unusual like that and places a burden on the employees to clean it up? Why shouldn't they have a duty to see that they have enough equipment and staffing to clean up that stuff properly? It's a good question, and it's exactly what Kroger did. They had Mr. Austin come in specifically on that day as they were cleaning the... Without the material that's apparently necessary to clean that kind of stuff up. Quickly anyway. Well, there's no evidence of that. In fact, when asked, would spill magic have been better or more effective than the mops, he says he doesn't really know. It might have helped a lot, but he can't really say whether it would have been better. So even Mr. Austin is unable to say. What about his expert? Pardon me? What about his expert? He's a layman. He doesn't know. Right. But what about his expert? Well, the expert simply does not go through any of the all-subs factors. The all-subs factors require additional evidence other than just that it would have prevented the fall. In all-subs, they talk about whether he specifically requested it that day. There's no evidence he requested it. It may have been sitting in the back, and he just didn't ask for it. It just hadn't made it to the cart yet. Well, I thought it was always on his cart. It usually is. Why would he ask for it if it's presumed to be there? When you find out it's not, you ask. This kind of sounds like contributory negligence to me, and you're not allowed to assert that. I mean, the thing about he walked across the oil, the thing about he should have asked for it, and all of this has been super proactive. That's for sure something you weigh by being a non-subscriber, the contributory negligence of the employee. I would agree. And these are not contributory negligence arguments. They're simply factors the Court looks at for determining necessity. And there are other ones, including whether it was an industry standard or commonly used. The expert report is completely silent on those issues. Whether a reasonably prudent employer would have provided spill magic, my guess is nobody has even heard of spill magic in this courtroom before. It's not commonly used. It was something Kroger was using to go above and beyond. That does not make it necessary. But Kroger put it on the cart as a matter of routine. It doesn't matter whether anybody in this Court had ever heard of it. They certainly had. That's true, but it was not an industry custom. The industry custom is using a mop. That's just generally known. The Court can take judicial notice of it. Because I will tell you this, most slip and falls are water-based substances. I mean, I have had literally dozens and dozens and dozens, probably hundreds as a state trial judge for eight years. And it was always some, you know, the ice melted or the grapes fell, the squishy grapes or whatever. They were water-based. It was not a bunch of oil from some mechanical thing. So I don't know that relying on like what we know from the slip and falls we've handled is particularly helpful. And that's why this is a different substance. That's what made it hard to clean. Right. He still, when you look at the all-subs factors, he still has failed to prove those. He did provide in his expert report some evidence that spill magic would have prevented the fall. On that factor, he did provide some evidence if this Court were to consider the expert declaration, not the report. The report doesn't do that. I mean, I don't know about the not the report, because it seems to me in his findings on Record 2605, he says he didn't, they didn't train him, and they knew or should have known that the equipment should be made available to them, the failure to provide spill magic and slip-resistant footwear contributed to or was a cause of Austin slip fall injuries. That's in his report at 2605. So had that been filed, I don't think we'd be making these arguments. Or you might be, but then we'd be talking about sort of quantity of evidence instead of lack of evidence. He never says that the tools provided were inadequate. We only have a duty to provide reasonable tools, not the best tools, reasonable tools. A mop and a broom and absorbent socks and paper towels, there's no evidence those weren't sufficient, reasonable to safely perform this task. That there may be some new development on the market and that Kroger has gone above and beyond to provide it doesn't establish a basis for liability. Why shouldn't he have an opportunity to prove that a mop and a broom and a rag weren't sufficient for this kind of oil? It's fine if it's a water spill. He should have proven that during his discovery, during his expert report designation period. He should have made those types of inquiries and opinions and conclusions, but he failed to do so. Why are you fighting the expert report being submitted if you don't think it wins the day for him? The expert report itself, we don't think wins the day. The expert declaration, which was only provided to us after all of the briefing on the summary judgment and in connection with the SIR reply, in fact, it wasn't even attached until the motion to reconsider, it's just not fair to bring it in that late. Well, that has to be determined under 54B instead of 59E or whatever those numbers are. I think this is a tricky one because what he's asking, the import of what he's asking is that the court reconsider the summary judgment in light of this evidence. That's the same thing that this court saw in the Russ case where they late designate or late provide a report, and it's purely discretionary. If the court had agreed to consider it, that's purely discretionary. Yeah, but you see, 54 is a much less, a smaller thumb on the scale. Both of them are discretionary, but 59 is like this extraordinary new evidence. Some witness popped out from behind a tree after there was a final judgment and never heard of them and all that, and he's saying he can't meet that standard, and the judge found he couldn't meet that standard, and I agree, couldn't. But the 54 of like what's fair, that he can meet because, again, I think he's just confused about federal procedure, and I'm not sure that's a reason to lose a case. It was a strategic call whether to introduce evidence or not. He made that strategic call and decided not to produce evidence, and typically, with abuse of discretion standards, the district court has the discretion whether to allow an attorney to fix that mistake. Yeah, but it's an abuse of discretion to apply the wrong law. We've had cases where the wrong burden of proof was applied. Right. And you could say, well, I mean, I still would have won under the right burden of proof, maybe so, but the judge applied the wrong burden of proof. We've got to send it back. And so I kind of see this as analogous to that. The judge applied a beyond a reasonable doubt when it's a preponderance of the evidence. Maybe he still loses, but we don't know because the judge didn't apply the right standard. And wouldn't that be the kind of thing you remand? Well, that would just open up a new loophole in summary judgment procedure where instead of attaching evidence to a motion to reconsider, you attach evidence to a motion to file a surreply or you ask to reconsider a surreply because it's not final and try to get a lower standard applied. But you see, if the judge concluded that what he was doing was crafty and sort of laying behind the log and all of that, that would be a very valid reason to deny under even a 54 standard. I don't see that here personally. I really just see a misunderstanding of the law. But that's not up to me. But the district court can evaluate that. Do we have a lawyer who's being crafty and dodgy and weavy, or do we have a lawyer who's just confused and shouldn't lose his case over confusion? And that's a 54 decision. But a 59 decision, that's a little different. That's all I'm saying. You've got to apply the right standard. He might lose either way. I understand. The other issue that the Court granted summary judgment on was causation. And the argument against causation is that we failed to meet the burden of proof. I think I don't need to argue on that. I think the Court is clear where the burden of production is and how it's met. But he also makes an argument that we made a new argument in our reply.  He says in the reply that Kroger argued for the very first time that Texas's summary judgment rule was actually fashioned after its Federal counterpart and that we have long permitted Rule 56 to permit no evidence summary judgment. That was simply responsive to what the plaintiff was arguing in his response. In addition, on the causation issue, Your time has expired. You can finish that thought. In summary judgment practice, we are permitted to respond in our reply to arguments made in the response. And that's all that Kroger did in this case. Thank you. Thank you. Mr. Keeter. Thank you. The question of whether Randy Austin addressed the issue of whether this product was necessary can be resolved by this Court very briefly, very quickly. It can look at the record on appeal of pages 2350 and 2351. That's the table of contents to Kroger's brief in support of its motion and its table of authorities. It never moved for summary judgment on the idea that Randy did not have evidence to show that the product was necessary. It never cited Alsup's v. Warren in its brief. The district court granted summary judgment on the lack of evidence of breach on its own. It can't grant summary judgment on a ground not requested by the movement. Kroger opted to make the argument that there is no duty as a matter of law to provide more than one safe way to address a problem. And for that proposition, they cited several cases which don't stand for that proposition but stand for the idea that you have to show breach and causation, et cetera. I have to be on notice of what I'm responding to. They did not say, Mr. Keeter, here are the six Alsup's factors. You have no evidence of any of them. If it did, I would have responded to them. But it didn't make that argument. And it's not fair to me or my client to allow the Court to grant a summary judgment and say you didn't come forward with evidence that you were never asked to come forward with. It did move on causation. And obviously, I'm confused. Or I've lived here long enough to know that when you say bless his heart, that's not usually a good thing. So in any event, if this Court wants to make, look at the causation issue, we would respectfully ask that it reverse the Court's decision on denying our motion to reconsider the SIR reply and that it actually consider the substance of the evidence. I believe the expert affidavit is sufficient to show causation. As to whether he actually uses the word necessary or not, it's what could a reasonable jury infer. He doesn't have to come forward and say, him saying it's necessary would be just as conclusory as him saying that it was a substantial factor. The fact is, this is the evidence taken together. Could a reasonable juror conclude that the plaintiff prevails? And I think that if you take all of the evidence in the record, including the expert report, we plainly satisfy that standard. But the fact that the expert does not say it is necessary is irrelevant to this Court's  It is not a ground on which Kroger moved for summary judgment. Causation, I think, is present from his report and it should not have a problem should the Court conclude that I'm not correct in my summary judgment practice and grant the, or sorry, overrule the Court's decision on denying the motion for reconsideration. The other thing I want to address. MS. GOTTLIEB. Your Honor, I can think things that my colleagues don't think. That has certainly happened more than once. It's just, this is the first I've heard of the argument you've made procedurally after almost nine years on the Federal Court. But I'm sitting with two judges who have spent a whole lot longer on this Court.  MR. CLEMENT. I'm hoping this is one of those cases, Judge. But the other thing I'd like to. MS. GOTTLIEB. I don't think it's going to be on that point. But. MR. CLEMENT. Hey, you know, I'm doing my best. The other thing I want to address, and this, I think, is important when we're talking about the duty and foreseeability analysis. Ms. Piva correctly cited all of the things that Texas courts talk about with respect to whether there's a duty. The placement of the risk, the foreseeability, the consequences of the conduct. Those are factors the Texas Supreme Court considers when you're trying to decide, in the first instance, whether there is a duty. That issue has been resolved for 100 years. Okay? You look at those factors, for example, when you're trying to conclude whether someone had the obligation to protect someone from a third-party criminal. Okay? Is there a duty in this circumstance? Well, let's look at all these factors here and determine as a matter of law whether there was one. There's no question that there is a duty to provide necessary instrumentalities. That duty exists. It's there. It never goes away. It doesn't adjust based on the circumstances of the case. So the only thing that foreseeability can be relevant to, not duty, it can only be relevant to causation. Cause and fact and foreseeability is proximate causation. Obviously, an element of negligence. But it has been long held, with two exceptions that the district courts found, that proximate causation is necessarily an issue of fact. In the absence of a clear case where there's just no evidence of causation whatsoever, they will grant summary judgments. But to suggest that as a matter of law, this injury is not foreseeable, that is not the way Texas courts or Federal courts look at personal injury, especially non-subscriber claims, as you noted, Your Honor. What that essentially would do, if you foreseeability is analyzed in the context of law, it takes every non-subscriber personal injury case and turns it into an issue for the judges, as opposed to for the juries. I see my time is almost up. I think the Court is well aware that in the 7 years that this case has been going on, it's now been presided over by one trial judge and 15 appellate judges. We're asking for it to be considered by eight jurors. Twice this case has been dismissed a month before trial, based on evidence that everyone knows exists and based on law that really hasn't changed. We ask this Court to reverse and remand, Your Honor. Thank you. Thank you, sir.